UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMIE LEE BARNHILL,

           Plaintiff,        Civil Action No. 15-14440
                                  Honorable Sean F. Cox
                                  Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [13, 16]

Plaintiff Jamie Lee Barnhill ("Barnhill") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [13, 16], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Barnhill is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [16] be GRANTED, Barnhill's Motion for Summary Judgment [13] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

**II. REPORT**

    **A. Procedural History**

On August 22, 2012, Barnhill filed an application for DIB, alleging a disability onset date of September 11, 2010.[1] (Tr. 156-59). This application was denied initially on October 10, 2012. (Tr. 91-94). Barnhill requested reconsideration of that denial (Tr. 95), which was denied on January 31, 2013 (Tr. 96-98). He then filed a timely request for an administrative hearing, which was held on August 28, 2014, before ALJ Christopher Ambrose. (Tr. 25-76). Barnhill, who was represented by attorney Gregory Fry, testified at the hearing, as did vocational expert Amelia Shelton. (*Id.*). On September 4, 2014, the ALJ issued a written decision finding that Barnhill is not disabled under the Act. (Tr. 13-21). On November 23, 2015, the Appeals Council denied review. (Tr. 1-6). Barnhill timely filed for judicial review of the final decision on December 23, 2015. (Doc. #1).

    **B. Framework for Disability Determinations**

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

---

[1] Barnhill's date last insured is June 30, 2012. (Tr. 77). Thus, he must establish disability on or before that date in order to be entitled to DIB.

2

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.   Background**

   *1.   Barnhill's Reports and Testimony*

At the time of the August 2014 administrative hearing, Barnhill was 45 years old, and at 5'10" tall, weighed 160 pounds.  (Tr. 32).  He lived in a house in Jackson, Michigan, with his wife and uncle; up until May 2014, however, Barnhill was living in Kentucky.  (Tr. 34, 36-37).  He dropped out of high school in the ninth grade because he "started a family too soon" and had no further education.  (Tr. 32-33).  He testified that he can read, but has difficulty comprehending, and can write, but has difficulty spelling.  (Tr. 33-34).  Previously, he worked in various jobs, including plant nursery laborer, salvage work, and auto glass repair.  (Tr. 40-47).

However, he allegedly stopped working because of his medical condition in September 2010. (Tr. 182). Since that time, he has worked "odd jobs," such as mowing lawns and painting, but has to "do things at [his] own speed." (Tr. 36, 38).

Barnhill alleges disability primarily as a result of back and leg pain, which worsened significantly after he was injured while riding a four-wheeler in July 2011. (Tr. 47-48). When asked if his back pain was better or worse than at the time of the injury, he indicated it was "getting worse" and said that, back in 2012, he could "move a lot better." (Tr. 52-53). Indeed, he testified that, while he could barely lift a cup of coffee at the time of the 2014 hearing, back in 2012, he could lift 25 pounds. (Tr. 53, 55). In addition, in 2012, he could sit for 15-20 minutes before having to change position and could walk "around the block." (Tr. 58-59, 61). He also indicated that, since May 2014, he had been taking medication for depression. (Tr. 55-56).

Barnhill testified that prior to May 2014, he drank approximately a case of beer a day (paid for by his mother), saying he was "using it for like a pain medicine." (Tr. 39-40). In addition, he used marijuana on a daily basis. (Tr. 64-65). Apparently, he stopped drinking and using marijuana when he moved to Michigan, obtained health insurance, and was able to receive medical treatment and prescription medication. (Tr. 39, 56, 65).

Barnhill is able to care for his pets, attend to his personal care, prepare simple meals, wash dishes, sweep, ride in a car, shop in stores, go out to eat, go to the movies, and spend time with others. (Tr. 204-07). He does not have a driver's license because of three prior DUIs. (Tr. 206). He has difficulty sleeping because of pain and spends "a couple of hours" a day relaxing in a recliner. (Tr. 71, 204).

      2.    *Medical Evidence*

The Court has thoroughly reviewed Barnhill's medical record. In lieu of summarizing his

medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. Vocational Expert's Testimony

Amelia Shelton testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 72-74). The ALJ asked the VE to imagine a claimant of Barnhill's age, education, and work experience who could perform light work, with the following additional limitations: no climbing of ladders, ropes, or scaffolds; only occasional climbing of stairs and ramps; and only occasional balancing, stooping, kneeling, crouching, and crawling. (Tr. 72-73). The VE testified that the hypothetical individual would not be capable of performing any of Barnhill's past relevant work. (*Id.*). The VE further testified, however, that the hypothetical individual would be capable of working in the jobs of fast food worker (750,000 jobs nationally), assembler, production (223,000 jobs), and cashier (542,000 jobs). (Tr. 59-60).

**D.     The ALJ's Findings**

Following the five-step sequential analysis, the ALJ found that Barnhill is not disabled under the Act. At Step One, the ALJ found that Barnhill did not engage in substantial gainful activity between September 11, 2010 (his alleged onset date) and June 30, 2012 (his date last insured). (Tr. 15). At Step Two, the ALJ found that Barnhill has the severe impairments of degenerative disc disease of the cervical and lumbar spines, and alcohol and cannabis dependence, in remission. (*Id.*). At Step Three, the ALJ found that Barnhill's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 16).

The ALJ then assessed Barnhill's residual functional capacity ("RFC"), concluding that, through his date last insured, he was capable of performing light work, with the following

5

additional limitations: no climbing of ladders, ropes, or scaffolds; only occasional climbing of stairs and ramps; and only occasional balancing, stooping, kneeling, crouching, and crawling. (Tr. 17).

At Step Four, the ALJ determined that, through his date last insured, Barnhill was not capable of performing any of his past relevant work. (Tr. 19). At Step Five, the ALJ determined, based in part on the VE's testimony, that Barnhill was capable of performing a significant number of jobs that exist in the national economy through his date last insured. (Tr. 20). As a result, the ALJ concluded that Barnhill is not disabled under the Act. (Tr. 21).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.  Analysis**

In his motion, Barnhill argues that the ALJ erred in:  (1) assessing his RFC; (2) evaluating his credibility; and (3) failing to pose a hypothetical question to the VE that included all of his credible limitations.  Each of these arguments is addressed below.

7

*1.    The ALJ's RFC Finding is Supported by Substantial Evidence*

As set forth above, the ALJ determined that Barnhill has the RFC to perform light work, with the following additional limitations: no climbing of ladders, ropes, or scaffolds; only occasional climbing of stairs and ramps; and only occasional balancing, stooping, kneeling, crouching, and crawling. (Tr. 17).

In formulating Barnhill's RFC, the ALJ discussed both the objective and subjective evidence. As an initial matter, there is no record of any medical treatment between Barnhill's alleged onset date (in September 2010) and July 2011. As the ALJ noted, on July 20, 2011, Barnhill received emergency room treatment after he was injured while riding on a four-wheeler.[2] (Tr. 17, 305-20). A pelvic CT showed no evidence of acute fracture or dislocation, but did show degenerative disc disease and facet arthopathy at L4-L5 and L5-S1, contributing to neural foraminal and central canal narrowing. (Tr. 313). Similarly, a lumbar spine CT performed at the same time showed disc osteophyte complexes as the lower thoracic and lower vertebral levels. (Tr. 315-16). Barnhill was diagnosed with a lumbar strain and sprained left knee and discharged the same day. (Tr. 311).

As the ALJ noted, Barnhill again sought emergency room treatment in August 2012, after he was assaulted by his roommate and suffered a minor closed head injury.[3] (Tr. 17-18, 242-55). On examination, Barnhill had no back tenderness. (Tr. 243). A CT of Barnhill's brain showed

---

[2] The Court notes that Barnhill apparently was well enough to ride a four-wheeler in July 2011, which is certainly, to some extent at least, inconsistent with his assertion that he has been disabled since September 2010. *See, e.g., Dawson v. Astrue*, 2011 WL 6399450, at *5 (W.D. Ark. Dec. 21, 2011) ("Plaintiff reportedly injured her back after falling off a four-wheeler. Such activity is clearly inconsistent with her alleged level of disability.") (citation omitted); *Sanders v. Comm'r of Soc. Sec.*, 66 F. App'x 551, 554 (6th Cir. 2003) (allegations of disabling pain inconsistent with claimant's activities, including hunting, fishing, and riding a four-wheeler).

[3] But for this assault, the record would not contain any evidence of medical treatment between July 2011 and May 2014 (nearly two years after Barnhill's date last insured).

no intracranial abnormality. (Tr. 253). And, a CT of his cervical spine showed only degenerative changes, predominantly at C4-C5 and C5-C6, with some mild-to-moderate neural foraminal stenosis and central canal stenosis. (Tr. 251-52). Following this emergency room visit, the record contains no indication of additional medical treatment until May 2014.

The ALJ also considered medical evidence significantly post-dating Barnhill's date last insured. Specifically, the ALJ noted that office visit reports from May through August 2014 all indicated that Barnhill "generally had normal musculoskeletal, neurological and psychiatric examinations." (Tr. 18, 331-32, 335, 339, 343, 347). He routinely presented with normal range of motion in his extremities, no numbness, and a steady gait and normal coordination, and was oriented with appropriate mood and affect. (Tr. 18, 258, 332, 335, 339, 343, 347, 350, 353, 359, 367). As the ALJ further noted, Barnhill complained of back pain at a June 4, 2014, office visit; at that visit, however, he refused to perform any of the tasks for his physical examination (but was observed to be able to get up and down from the examination table and walk out of the office without any difficulty). (Tr. 18, 350). Lumbar spine x-rays were ordered, which showed degenerative disc disease from L3 through S1. (Tr. 370). As a result, Barnhill was referred to physical therapy, which he later reported did not help his back pain. (Tr. 337).

In addition to the medical evidence discussed above, the ALJ considered several other facts in formulating Barnhill's RFC. First, he noted that other than the July 2011 and August 2012 visits discussed above, Barnhill had no record of emergency room treatment for severe or extreme back pain prior to his date last insured. (Tr. 18). Similarly, the ALJ noted that at the same time Barnhill claimed he did not have medical insurance or money for medical treatment, he (or his mother) spent an untold amount on alcohol (a case of beer a day), cigarettes, and marijuana. (Tr. 17, 40, 50, 64-65). As the Commissioner persuasively argues, the ALJ

9

legitimately considered these facts in evaluating Barnhill's allegations of disability. (Doc. #16 at 14) (citing *Strong v. Social Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that a claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain.")). Likewise, the ALJ referenced Barnhill's testimony that his back pain had progressively worsened, as well as his admission that, back in 2012, he could "move a lot better." (Tr. 18, 52-53). Having discussed all of this evidence – both objective and subjective – the ALJ then specifically found that Barnhill's back pain restricted him to a limited range of light work. (Tr. 17). In doing so, the ALJ noted that "[t]he overall record cannot reasonably support any greater limitation …." (Tr. 19).

In the face of all of this evidence, Barnhill appears to advance two arguments. First, he complains that the ALJ did not base the RFC determination on any medical opinion, noting that no consultative examination was ordered, and the state agency examining physicians found insufficient medical evidence of record to opine as to Barnhill's work capacity during the relevant time period. (Doc. #13 at 22 (referencing Tr. 80)). According to Barnhill, then, the ALJ was "playing doctor and there is no medical opinion as to physical capacity or lack thereof." (*Id.*). The Court disagrees.

It was Barnhill, not the ALJ, who had the burden of showing that his medically determinable impairments reduced his RFC to the point where he was incapable of working *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("If a claimant does not secure an official 'Residual Functional Capacity' assessment by a medical or psychological examiner, and simply relies on other evidence to prove his impairments, it does not follow that the Commissioner subsequently must provide the RFC assessment at step five."). Here, then, where

the record showed "relatively little physical impairment" such that the ALJ was capable of rendering a "commonsense judgment" about Barnhill's RFC, the Court finds no error in the fact that the RFC was not based on a medical opinion.[4] *See Sneed v. Comm'r of Soc. Sec.*, 2014 WL 861525, at *22 (E.D. Mich. Mar. 5, 2014) (internal quotations omitted).

Barnhill also argues that the ALJ erred in "not according adequate weight to the opinion of [his] treating physical therapist." (Doc. #13 at 23). The record reflects that Barnhill underwent physical therapy for his low back pain from June 30, 2014, to July 29, 2014 (again, more than two years after his date last insured). (Tr. 322). On his final day of physical therapy, an "assistant and/or therapist" whose name is indecipherable indicated that Barnhill could sit for 15-20 minutes before needing to stand, and could sleep for only two hours at a time due to pain. (Tr. 323). That assistant and/or therapist also noted that Barnhill reported no improvement with physical therapy and indicated that he might benefit from further testing or pain management. (*Id.*).

Barnhill cites the so-called "treating physician rule," arguing that "even if the objective medical findings are thin, the opinion of the treating physician must still be granted deference and weighed using all the factors set forth in 20 C.F.R. §404.1527." (Doc. #13 at 23). This argument misses the mark. Only "acceptable medical sources" can be considered a treating

---

[4] Barnhill also contends – in one sentence and without any developed argument whatsoever – that the ALJ should have sent him for a consultative examination. (Doc. #13 at 22). Barnhill does not, however, cite any law for the proposition that the ALJ was required to do so. The ALJ has the discretion to determine whether such an evaluation is necessary based on the sufficiency of the record before him. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."). *See also* 20 C.F.R. §404.1517. Here, as detailed above, there was sufficient medical evidence in the record to permit the ALJ to make an informed decision as to Barnhill's RFC, and he did not abuse his discretion in declining to order a consultative examination.

11

source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See Robinson v. Comm'r of Soc. Sec.*, 2016 WL 3085762, at *8 (W.D. Mich. June 2, 2016) (citing *Soc. Sec. Rul. 06-03p*, 2006 WL 2329939, at *1 (Aug. 9, 2006)). Here, the assistant and/or therapist who provided the opinion at issue is not an "acceptable medical source" within the meaning of the applicable regulations. *See* 20 C.F.R. §404.1513. Rather, physical therapists are "other sources," and, when considering the opinions of "other sources," the ALJ is advised only to "explain the weight given to [them] or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Soc. Sec. Rul. 06-03p*, 2006 WL 2329939, at *6.

Here, any alleged error on the part of the ALJ in failing to explicitly discuss this opinion or explain the weight given to it is harmless. There is no dispute that the assistant and/or therapist rendering the opinion at issue did not start treating Barnhill until two years after his date last insured. As Barnhill's attorney conceded at the administrative hearing, evidence generated in 2014 has nothing to do with a case covering 2010 to mid-2012. (Tr. 28 ("There are things that are happening very rapidly right now but they are not going to assist with our date last insured ….")). *See also Strong*, 88 F. App'x at 845 ("Evidence of disability obtained after the expiration of insured status is generally of little probative value."). Here, the assistant and/or therapist did not relate the stated limitations back to the relevant time period, as the form makes clear that the opinion provided pertained to Barnhill's "*current* level of function." (Tr. 323 (emphasis added)). Moreover, Barnhill, his mother, and the physical therapist all indicated that Barnhill's medical condition had worsened after his date last insured. (Tr. 53, 190, 322). For all of these reasons, the assistant and/or therapist's opinion did not "have an effect on the outcome of the case," *Soc.*

12

*Sec. Rul. 06-03p*, 2006 WL 2329939, at *1, and, thus, the ALJ's failure to assign specific weight to it was, at most, harmless error.

For all of these reasons, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

          2.     *The ALJ's Credibility Determination is Supported by Substantial Evidence*

Barnhill also argues that the ALJ's credibility analysis was deficient. (Doc. #13 at 27-29). Courts have recognized that determinations of credibility related to a claimant's subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible. *Soc. Sec. Rul. 96-7*, 1996 WL 374186, *1 (July 2, 1996); *see also* 20 C.F.R. §404.1529.

Here, reading the ALJ's decision as a whole, he articulated several facts in support of his

13

conclusion that that Barnhill was less than fully credible.[5]  First, he noted that Barnhill had worked during the period of alleged disability, performing "different odd jobs, including mowing lawns and painting …." (Tr. 15, 36).  Courts have recognized that a claimant's ability to perform the duties of part-time work is a relevant consideration in evaluating the credibility of allegations of disability.  *See, e.g., Ferrell v. Comm'r of Soc. Sec.*, 2016 WL 316724, at *4 (W.D. Mich. Jan. 27, 2016).  Second, the ALJ considered both the lack of medical evidence covering the relevant time period, and the fact that the medical evidence post-dating Barnhill's date last insured was largely unremarkable.  (Tr. 18).  These facts too were relevant considerations.  *See Bentley v. Comm'r of Soc. Sec.*, 23 F. App'x 434, 436 (6th Cir. 2001) (where claimant's testimony conflicted with objective medical evidence of record, ALJ did not err in rejecting that testimony); *Hamlin v. Comm'r of Soc. Sec.*, 1996 WL 729287, at *2 (6th Cir. Dec. 17, 1996) ("gaps in a history of medical treatment are likely to suggest that the claimant was not receiving treatment during the gaps and was not disabled then").  Third, the ALJ noted that although Barnhill alleged disability since September 2010, he was able to ride a four-wheeler in July 2011, which, as noted above, *see supra* n. 2, is inconsistent with his claims of total disability.  (Tr. 18, 310).  And, fourth, the ALJ discussed the possibility that Barnhill exaggerated his symptoms at a June 2014 doctor's appointment, noting that while he complained of pain, and "did not want to perform any of the tasks for his physical examination," he nevertheless got up and down from the examination table and walked out of the office without difficulty.  (Tr. 18,

---

[5] In his reply brief, Barnhill suggests that it is inappropriate to review "the whole decision to glean from it the evidence that the ALJ used to discredit plaintiff's testimony …." (Doc. #17 at 2).  The Court disagrees.  Courts have long recognized that opinions must be read as a whole, and it makes little sense to require an ALJ to repeat similar factual findings in various parts of the decision.  *See Noble v. Comm'r of Soc. Sec.*, 2015 WL 4934562, at *4 (E.D. Mich. August 8, 2015) ("Although these activities were not specifically mentioned in the ALJ's adaptive functionality analysis, they were mentioned in other sections of his opinion and should be considered in assessing whether substantial evidence supports the ALJ's decision.").

14

350). Again, these were valid considerations in evaluating Barnhill's credibility. *See Spelic v. Comm'r of Soc. Sec.*, 2015 WL 9286768, at *12 (E.D. Mich. Nov. 23, 2015) (finding ALJ's credibility determination well-supported where there was evidence of claimant's tendency to exaggerate and inaccurately report her symptoms).

The ALJ also discussed Barnhill's daily activities, finding them inconsistent with "the activities and abilities of an individual who is completely unable to engage in any substantial gainful activity," and specifically stating as follows:

> … the reports indicated that the claimant could prepare simple meals. He could perform simple household chores, including cooking, washing, and sweeping. He would use the rider mower for mowing. The claimant would go out regularly, walking and riding in a car. He could perform personal care and grooming. The claimant would watch television, movies and baseball games.

(Tr. 19 (citing Tr. 202-10)). This is the only aspect of the ALJ's credibility analysis that Barnhill attacks, arguing that the ALJ "categorized [his daily activities] correctly but failed to include that they are performed sporadically when [his] pain level allows him to move around." (Doc. #13 at 28). As an initial matter, Barnhill provides no citation to the record in support of this assertion. Moreover, even if Barnhill is correct that the ALJ failed to consider the alleged sporadic nature of the foregoing activities of daily living in finding him less than fully credible, this is, at most, harmless error for two reasons. First, the fact that Barnhill could engage in these activities on even a sporadic basis detracts from his allegations of disabling pain. Second, Barnhill's failure to challenge any of the other supportable bases for the ALJ's credibility determination renders this issue inconsequential. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) ("[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal") (citation omitted); *Young v. Comm'r of Soc.*

15

*Sec.*, 2015 WL 1511096, at *10 (E.D. Mich. Mar. 24, 2015) (rejecting credibility argument where ALJ "proffered several specific reasons for discounting Plaintiff's credibility in addition to Plaintiff's daily activities"). Thus, the Court finds no error warranting remand in the ALJ's credibility analysis.[6]

### 3. Substantial Evidence Supports the ALJ's Step Five Finding

Barnhill also argues that the ALJ's hypothetical question to the VE was insufficient because it failed to account for all of his credible limitations. (Doc. #13 at 26-27). An ALJ may rely on the testimony of a vocational expert to determine whether jobs would be available for an individual who has particular workplace restrictions. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of a conclusion that the claimant can perform other work, the question must accurately portray the claimant's physical and mental impairments. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).

Here, Barnhill argues that the ALJ omitted from the hypothetical question certain limitations, including the fact that he did "not even finish[] the first year of high school or the fact that he is barely able to read street signs and cannot spell." (Doc. #13 at 26). Barnhill claims that how these "additional restrictions would further reduce [his] employability is unknown." (*Id.*). As for the education issue, the VE was present for Barnhill's testimony that he did not finish the ninth grade, and the ALJ explicitly asked her to factor in Barnhill's educational

---

[6] Barnhill also asserts the ALJ "erroneously neglected" to mention evidence from 2014 of muscle spasm, limited spinal motion, and swelling of the neck in analyzing the credibility of his allegations of disability. (Doc. #13 at 29 (referencing Tr. 329-76)). All of this evidence, however, vastly post-dates the relevant period. Moreover, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (citation omitted).

16

background when testifying about the kinds of jobs he could perform. (Tr. 27, 32-33, 72). Barnhill's counsel was given the opportunity to cross-examine the VE and, thus, could have obtained additional detail about the educational requirements of the jobs she referenced. (Tr. 74-75). He chose not to do so, however, and thus has waived any argument he might otherwise have regarding the VE's testimony in this respect. *See, e.g., Zorn v. Comm'r of Soc. Sec.*, 2015 WL 5545257, at *4 (E.D. Mich. Sept. 18, 2015) ("it was the responsibility of the Plaintiff's attorney, not the ALJ, to question the VE on their assessment" and failure to do constitutes waiver).

As for Barnhill's alleged inability to read and write, the ALJ "was under no obligation to … include limitations only weakly supported by the record." *Harris v. Comm'r of Soc. Sec.*, 2012 WL 313743, at *6 (E.D. Mich. Jan. 11, 2012); *see also Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013) ("An ALJ is only required to incorporate into a hypothetical question those limitations he finds credible."). Barnhill testified at the administrative hearing that he has difficulty reading and writing, but also said he can read street signs and restaurant menus and write out lists (albeit with misspellings). (Tr. 33-34). Elsewhere in the record, the evidence is somewhat equivocal as to Barnhill's alleged difficulties with reading and writing. For example, Barnhill stated that he could read and write when he applied for benefits. (Tr. 181). He had no trouble reading or writing during a face-to-face interview with a Social Security Administration employee. (Tr. 178-79). And, he was able to read and answer, in writing, a variety of forms in conjunction with his application for benefits. (Tr. 197-219). Given all of these facts, the ALJ did not err in failing to include in the hypothetical question presented to the

17

VE any limitations with respect to Barnhill's ability to read and write.[7]

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [16] be GRANTED, Barnhill's Motion for Summary Judgment [13] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: November 30, 2016           s/David R. Grand
Ann Arbor, Michigan           DAVID R. GRAND
         United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail

---

[7] Barnhill asserts in passing that he "cannot spell" (Doc. #13 at 26), and the record certainly contains numerous spelling mistakes in forms he completed (Tr. 197-219). As the Commissioner correctly points out, however, one of the jobs identified by the VE – the assembler, production position – only has a language level of one, which says nothing about correct spelling when writing. (Doc. #16 at 29 (citing Dictionary of Occupational Titles, *available at* 1991 WL 679074 (Jan. 1, 2016)). Where the VE testified that there were 223,000 of those positions in the national economy (Tr. 73), that job alone is sufficient to satisfy the Commissioner's burden at Step Five. *See Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 579 (6th Cir. 2009) ("Even if we agree that the ALJ's finding included jobs precluded by Nejat's exertional and non-exertional limitations, the ALJ's count of 2000 jobs [for one position] available in the third category withstands Nejat's challenge.").

to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 30, 2016.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager